SEYFARTH SHAW LLP
NICK C. GEANNACOPULOS (SBN 114822) ngeannacopulos@seyfarth.com
JONATHAN D. MARTIN (SBN 188744) jmartin@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendant
NEW UNITED MOTOR MANUFACTURING, INC.
(sued incorrectly herein as "NEW UNITED MOTORS MANUFACTURING, INC.")

LAW OFFICES OF LAWRENCE A. ORGAN
LAWRENCE A. ORGAN (SBN 175503)
ALLISON J. STONE (SBN 251390) allison@equalitylawcal.com
404 San Anselmo Avenue
San Anselmo, California 94960
Telephone: (415) 302-2901
Facsimile: (415) 453-2829

Attorneys for Plaintiff
REGINALD EDWARD/ELLIS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD EDWARD/ELLIS,<br><br>        Plaintiff,<br><br>    vs.<br><br>NEW UNITED MOTORS MANUFACTURING INC., and DOES 1 through 13,<br><br>        Defendants. | Case No. C07-05452 WHA<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: January 31, 2008<br>Time: 11:00 AM<br>Location: Courtroom 9, 19th Floor<br>Judge: William H. Alsup |

   Plaintiff REGINALD EDWARD/ELLIS and Defendant NEW UNITED MOTOR MANUFACTURING, INC. ("Defendant" or "NUMMI") submit this Joint Case Management Statement and Proposed Order and request the Court to adopt it as its Case Management Order in this case.

## 1. JURISDICTION AND SERVICE

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and Section 301 of the Labor Management Relations Act (29 U.S.C. § 185), in that Plaintiff's claims pertain directly to rights and obligations arising from the collective bargaining agreement ("CBA") that governed his employment with Defendant. The Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. All parties are subject to the Court's jurisdiction.

## 2. FACTS

### A. Plaintiff's Statement of the Facts

In or around 1991, Mr. Ellis was the victim of identify theft. He hired an attorney to assist him with a legal name change from Reginald Ellis to Reginald Edwards. On April 16, 2001, Mr. Ellis applied for employment with NUMMI using the name "Reggie Edwards." Under the NUMMI employment application section titled "Police Record," Mr. Ellis put "N/A" in response to the question: "Excluding convictions for possession or sale of marijuana that occurred over two years ago; convictions that have been sealed, expunged or legally eradicated; and misdemeanor convictions for which probation has been successfully completed and the case dismissed, [h]ave you ever been convicted of a misdemeanor or felony?" Mr. Ellis had pleaded guilty to a misdemeanor for possession of sale of marijuana in 1985 (Health and Safety Code 11359). Mr. Ellis had a conviction in 1990 for statutory rape (Penal Code § 261.5) of a woman with whom he now has four children. This conviction was dismissed upon Mr. Ellis's successful completion of probation.

On May 23, 2006, while Mr. Ellis was on temporary disability leave due to repetitive stress injuries, Assistant Manager Rachel Petty asked Mr. Ellis to come into the office to speak with her. When he arrived, Ms. Petty asked Union Representative Gabriel Sanchez to be present during an "interview" of Mr. Ellis. She also stated that Tom Sana, the head of NUMMI security, needed to be present. Ms. Petty then stated to Mr. Ellis "You're not who you say you are." Mr. Ellis explained that he changed his last name to "Edwards" after his identity was stolen. He informed Ms. Petty, Mr. Sana and Mr. Sanchez about the circumstances of the name change.

1    Ms. Petty then accused Mr. Ellis of failing to disclose prior felony and misdemeanor convictions
2    on his employment application. She stated that the Fremont Police Department informed her that
3    Mr. Ellis had criminal convictions in 1985 and 1992. She also proceeded to accuse him of
4    having a conviction for "forcible rape," assault with a deadly weapon, credit card fraud, sexual
5    assault and home invasion. Mr. Ellis denied all of those accusations and falsifying his
6    application.
7        Ms. Petty said she would further investigate the issue. After Mr. Ellis left the meeting,
8    Mr. Sana escorted him outside where the Fremont Police arrested him. After Mr. Ellis arrived at
9    the police station, the victims of the home invasion for which Mr. Ellis was arrested cleared him
10   of any involvement.
11       The very next day after Ms. Petty informed Mr. Ellis that she would investigate these
12   issues, Ms. Petty sent Mr. Ellis a termination letter stating that he violated "R-Rule-22:
13   Falsifying or omitting pertinent information on any Company record. With regards to
14   employment application, the rule shall be one year from the initial application unless unusual
15   circumstances exist." The Collective Bargaining Agreement ("CBA") covering the time period
16   August 5, 2005 to August 8, 2009, however, substantively changed R-Rule-22 to state "The
17   company can no longer go back more than one year for falsification or omissions on employment
18   applications." Importantly, Ms. Petty submitted a declaration to this Court stating that
19   "Defendant's Standards of Conduct R-22 [that] states: "Falsifying or omitting pertinent
20   information on any Company record. With regards to employment application, the rule shall be
21   one year from the initial application unless unusual circumstances exist." However, the
22   documentation that she attached to her declaration actually stated "Seniority will be broken and
23   lost, and employment shall cease for the following reasons: . . . h. Falsifying or omitting
24   pertinent information on any Company record, with regards to employment application, *the rule*
25   *shall be one (1) year from hire date.*" (emphasis added).
26       Although Mr. Ellis had attempted to legally change his name to "Edwards" in 1991, he
27   was frequently mistaken for another Reginald Ellis. He therefore petitioned the Alameda County
28   Superior Court in August 2007 to change his name back to "Ellis." During this process, he

discovered that his name had not been legally changed to "Edwards" in 1991 due to a filing mistake. The Judge, however, granted the order officially changing his name back to "Ellis." As a result of the facts stated above, Mr. Ellis exhausted his administrative remedies and filed the instant action.

### B. Defendant's Statement of the Facts

Without responding point-by-point to Plaintiff's allegations above, Defendant disputes Plaintiff's claims. Defendant asserts the following: Plaintiff was justly terminated for falsifying information provided as part of his employment with Defendant. He applied for employment with Defendant in 2001 as "Reggie L. Edwards," but as he concedes, that was not his legal name at the time. (He blames a "filing mistake" in connection with a name-change proceeding in which he had legal counsel. He claims not to have discovered the mistake until well after Defendant had terminated him – and 16 years after he had purportedly sought to legally change his name.) His name was actually "Reginald Edward Ellis," and he used two different social security numbers along with his two identities. Plaintiff filed workers' compensation claims, collected benefits and received compensation based on his false identity. These acts went beyond misrepresentations in an employment application.

In February 2007, Plaintiff was convicted of several felonies (after pleading no contest to each of them) under state law, including perjury for providing his false identity in an application for a driver's license; possession of a forged driver's license; attempt to file a forged instrument (use of fictitious birth certificate as part of an application for a new social security number); welfare fraud (using one of his identities to obtain welfare benefits, while using his other identity in conjunction with his employment with Defendant); insurance fraud (using his false name in an insurance proceeding); and attempted perjury (falsely stating under oath that he had not used his "Reginald Ellis" identity in the prior 16 years). These convictions validate his termination by Defendant.

Defendant did not initiate the sequence of events that ultimately led to Plaintiff's termination. On April 26, 2006, the Fremont Police Department notified Defendant's Security Manager that Plaintiff might be working under a false identity. According to the police, Plaintiff

4

1  had been stopped in his vehicle during a routine traffic stop and was asked to provide
2  documentation. He became belligerent, which prompted a background investigation. The
3  investigation revealed that Plaintiff's fingerprints matched those of a "Reginald Edward Ellis" –
4  as opposed to the "Reggie L. Edwards" name Plaintiff used with Defendant. The police searched
5  Plaintiff's home and found evidence pertaining to both of his identities. On May 18, 2006,
6  Defendant spoke with Plaintiff about his apparent use of a fake identity and he admitted that he
7  had created a new identity for himself – including a new name, a new social security number,
8  and a new date of birth – after a previous incarceration. He stated that he was unaware it was
9  illegal to create a new name, social security number and date of birth. Thereafter, Defendant
10 terminated him.

### 3. LEGAL ISSUES

#### A. Plaintiff's Statement of Legal Issues

At this time, Plaintiff's claims are as follows:

Breach of Collective Bargaining Agreement, Labor Management Relations Act, 1947, 29 U.S.C.A. § 141

Breach of Implied Covenant of Good Faith and Fair Dealing

Breach of Employment Contract

Discharge/termination in Violation of Public Policy

Unfair Business Practices, California Business and Professions Code Section 17200

Defamation

Defendant lists thirty-four defenses to Plaintiff's causes of action as set forth, in part, in his First Amended Complaint. Defendant does not state a factual basis for its defenses, however, and Plaintiff cannot meaningfully respond to thirty-four defenses at this time without a substantive basis with which to do so.

#### B. Defendant's Statement of Legal Issues

Plaintiff's First Amended Complaint is largely unintelligible. However, based on Plaintiff's above representation of its claims and potential claims, among the legal issues in this case are:

1. Whether Plaintiff's termination constituted a breach of contract;

2. Whether Defendant violated a "public policy" in terminating Plaintiff;

3. Whether Defendant published an unprivileged false statement about Plaintiff to an uninterested third party;

4. Whether Defendant had cause to terminate Plaintiff.

**4.    MOTIONS**

The parties have filed no prior or pending motions. Defendant anticipates that it may file a dispositive motion if the facts and law warrant it. Defendant will also file a motion to strike Plaintiff's untimely jury demand. Plaintiff anticipates filing a motion for summary adjudication on his breach of contract causes of action.

**5.    AMENDMENT OF PLEADINGS**

Plaintiff intends to file a Second Amended Complaint in early 2008.

**6.    EVIDENCE PRESERVATION**

Both parties have taken steps to preserve evidence relevant to the issues reasonably evident in this action, including preservation of any electronically recorded material.

**7.    DISCLOSURES**

The parties intend to exchange their Initial Disclosures prior to the Case Management Conference.

**8.    DISCOVERY**

The parties have agreed to the following discovery plan.

**A.    Non-expert discovery**

Defendant will take Plaintiff's deposition. Defendant believes that it will need two seven-hour days of actual deposition time to complete Plaintiff's deposition. In exchange, Defendant is willing to produce one of its witnesses for a two-day deposition. Prior to Plaintiff's deposition, Defendant will serve a request for production of documents. Defendant also intends to conduct discovery relating to Plaintiff's medical and/or criminal history/records, and may conduct additional written discovery. It will conduct additional depositions as necessary. If the circumstances warrant, Defendant anticipates that it will conduct one or more independent

medical examinations to evaluate any emotional distress claimed by Plaintiff.

Plaintiff intends to take several deposition(s), including those of various employees of Defendant, union officials, and the Fremont Police Department. He will serve written discovery, which may include but not necessarily be limited to a request for production of documents, interrogatories, and a request for admissions.

Other than as described above, the parties do not propose any limitation on, or change in, the number of discovery requests or the duration of discovery, other than what the federal and local rules already provide. The parties do not propose any limitation on the subject matter of discovery, other than what the federal and local rules already provide.

**B.    Expert discovery**

The parties may designate experts as necessary, and they may determine to depose each other's designated experts. The parties request that the Court consider setting deadlines for experts relating to damage issues after the time at which dispositive motions would be decided, so the parties can avoid the expense of damage experts if the case is disposed of via motion practice.

**C.    Deadlines for completion of discovery**

The parties propose the following discovery deadlines:

Written discovery completed by:  June 30, 2008

Depositions completed by:  August 31, 2008

Experts (liability) deposed by:  September 30, 2008

Experts (damages) deposed by:  January 16, 2009

9. **CLASS ACTION**

Not applicable.

10. **RELATED CASES**

Presently, Plaintiff is incarcerated in the Santa Rita County Jail pending review of a recent charge initiated by Defendant's workers' compensation insurance company. At this time, Plaintiff's counsel is not fully informed of the allegations, Plaintiff's response, or the projected time-line of his criminal case. When Plaintiff's counsel receives more information, they will

disclose it to opposing counsel and the Court if necessary or requested.

## 11. RELIEF

Plaintiff seeks the following in damages:

Economic Losses:  Approximately $120,000

    Loss of disability benefits from May 24, 2006 until the date, according to proof, that Plaintiff anticipated returning to work.

    Loss of salary for the position Plaintiff' anticipated returning to at the end of his disability leave May 24, 2006 to present.

Emotional Distress:  Approximately $150,000

    Depression, anxiety, loss of sleep, pain, stress, humiliation, and other symptoms resulting from, but not limited to:

        (1) False accusations of criminal charges and falsifying employment record, defamation of character in front of Union Representative and head of NUMMI security.

        (2) Loss of job

        (3) Failure to provide economic support for family and young children.

        (4) Loss of job-related opportunities.

Punitive Damages:  To be sought at trial

Defendant anticipates challenging Plaintiff's alleged damages on several grounds, including failure to mitigate and Plaintiff's own conduct resulting in his alleged damages

## 12. SETTLEMENT AND ADR

The parties have not yet attempted to settle this matter.  They have requested a telephone conference with the ADR Unit.

## 13. CONSENT TO MAGISTRATE FOR ALL PURPOSES

The parties do not consent to a magistrate judge.

## 14. OTHER REFERENCES

Not applicable.

## 15. NARROWING OF THE ISSUES

1  At this time, it is unknown whether issues can be narrowed.

2  **16.  EXPEDITED SCHEDULE**

3  The parties do not consent to an expedited schedule at this time.

4  **17.  SCHEDULING**

5  See section 8(C) above.  The parties propose a dispositive motion hearing cutoff of November 20, 2008, and a trial date of March 30, 2009.

7  **18.  TRIAL**

8  Plaintiff demanded a jury trial immediately after Plaintiff's counsel entered the case. Defendant intends to file a motion to strike Plaintiff's jury demand due to untimeliness.  The parties anticipate that the trial will last 7-10 days.

11  **19.  DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

12  Pursuant to Civil Local Rule 3-16, as part of its removal papers Defendant identified the following non-party interested entities: General Motors and Toyota Manufacturing.

14  **20.  MATTERS THAT MAY FACILITATE THE DISPOSITION OF THIS MATTER.**

15  None known at this time.

DATED:  January 23, 2008                    SEYFARTH SHAW LLP


By: ____/s/_____
         Jonathan D. Martin

Attorneys for Defendant
NEW UNITED MOTOR
MANUFACTURING, INC.
(sued incorrectly herein as "NEW UNITED
MOTORS MANUFACTURING, INC.")

DATED:  January 23, 2008                    LAW OFFICES OF LAWRENCE A.
                                            ORGAN


By: ___/s/_____
         Allison J. Stone

Attorneys for Plaintiff
REGINALD EDWARD/ELLIS

SF1 28313075.1