IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

REGINALD EDWARD/ELLIS,

    Plaintiffs,

v.

NEW UNITED MOTORS MANUFACTURING, INC. AND DOES 1 THROUGH 13,

    Defendants.

No. C 07-05452 WHA

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this action for breach of a collective bargaining agreement, breach of the implied covenant of good faith, slander, and wrongful termination in violation of public policy, defendant moves for summary judgment. Because this order finds that there are no genuine issues of material fact as to any of plaintiff's claims, defendant's motion for summary judgment is **GRANTED**.

## STATEMENT

Plaintiff was an employee at defendant's automobile plant, New United Motors Manufacturing. He was a production worker. He began his employment in 2001. He was fired on May 24, 2006. While plaintiff worked at defendant's plant, he was a member of the United Auto Workers, Local 2244. The union had a collective bargaining agreement with defendant. The agreement governed plaintiff's employment.

Plaintiff was terminated when defendant learned that he had not been using his true legal name. Defendant became aware of the situation when members of the Fremont police department initiated a meeting with an assistant manager at the plant, Rachel Petty. The police told her that plaintiff had been convicted of possession of marijuana with intent to distribute, possession of cocaine, assault with a deadly weapon, and forcible rape and sodomy. They also told her that plaintiff was under investigation for credit card fraud and that they believed he may have broken into someone's house. The police also informed her that plaintiff had been using a false name, a false social security number and a false birth date, and was possibly using a fake identity to receive some type of governmental benefits. They also stated that plaintiff was in possession of a firearm, which he was not allowed to do since he was a convicted felon (Petty Decl. ¶ 3).

Plaintiff used the name Reggie Lamont Edwards when he applied for his job with defendant. That was the name he used throughout his employment and on company records. Plaintiff's true legal name is Reginald Edward Ellis (Martin Decl. Exh. L at 5). Plaintiff started using the name Reggie Lamont Edwards around 1990. Plaintiff claims that he started using the name because he was a victim of identity theft (Edward/Ellis Decl. 2). But he provides no documentation that such a theft ever took place. He never legally changed his name. He never informed defendant of his true name. He also never informed his employer that he had ever been convicted of any crimes.

Upon learning from the police that plaintiff might have been untruthful about his identity, Petty contacted plaintiff's union representative, Gabriel Sanchez. Plaintiff contends that Petty told Sanchez that she had to discipline him about another matter that had not been resolved. But apparently the issue, which is not relevant here, was already resolved. This communication took place on May 17, 2006 (*id*. at 3).

On May 23, assistant manager Petty contacted plaintiff at home. Plaintiff was on disability leave. She informed him that he had to come into the office to speak to her. When he arrived, Petty asked Union Rep Sanchez to be present during an "interview" of plaintiff (*id*. at 4). She also stated that Tom Sana, head of security, needed to be present as well (*ibid*.). In the

presence of Sanchez and Sana, Petty told plaintiff, "You are not who you say you are" (*ibid*.). She stated that Sana had information about his criminal background. She also accused plaintiff of failing to disclose prior felony convictions in 1985 and 1990. She accused him of being convicted of forcible rape, assault with a deadly weapon, credit card fraud, and being a suspect in a home invasion. Plaintiff denied all accusations. He also denied that he had falsified his employment application. After his meeting with Petty, plaintiff was arrested for a home invasion. He was later cleared of the charge (*ibid*.).

Plaintiff's employment was terminated on May 24. Plaintiff's termination was based on his violation of a provision in the collective bargaining agreement. That provision stated that an employee would forfeit his employment for "[f]alsifying or omitting pertinent information on any [c]ompany record. With regards to employment application the rule shall be one year from the initial application unless unusual circumstances exist." The union filed a grievance on plaintiff's behalf. The union later dropped the case because it determined that his case could not be won in arbitration.

Plaintiff brought this action on August 14, 2007, alleging breach of the collective bargaining agreement, breach of the implied covenant of good faith and fair dealing, slander, and wrongful termination in violation of public policy. Defendant now moves for summary judgment.

**ANALYSIS**

Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

3

The moving party "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  When the moving party meets its initial burden, the burden then shifts to the party opposing judgment to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### 1. PLAINTIFF'S CLAIM FOR BREACH OF THE COLLECTIVE BARGAINING AGREEMENT.

This suit for breach of a collective bargaining agreement is brought under Section 301 of the Labor Management Relations Act (29 U.S.C. 185).  To establish a claim brought under Section 301 against his employer, plaintiff must first establish that his union breached its duty of fair representation.  Not only must the employee-plaintiff show that his "discharge was contrary to the contract" but also that there was "a breach of duty by the union." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164 (1983).  Plaintiff made no attempt to satisfy this requirement.  Plaintiff cannot sustain his claim for breach of the collective bargaining agreement by his employer.

Moreover, there are no facts in the summary judgment record to raise a genuine issue of material fact.  Upon plaintiff's termination, a grievance was filed on his behalf with the union (Martin Decl. Exh. J).  The union decided to not pursue plaintiff's claim that he was unjustly terminated:  "After reviewing the facts, it has been determined that your case cannot be won in arbitration.  For the above-stated reason, you are hereby notified that [your] case has officially been withdrawn" (*id*. Exh. K).  The union did not violate its duty of fair representation.

"A union breaches that duty if its actions in resolving a union member's claim are arbitrary, discriminatory, or in bad faith toward that member.  This standard may be met when the union arbitrarily ignores a meritorious grievance or processes it in a perfunctory fashion." *Herman v. United Brotherhood of Carpenters and Joiners of America, Local Union No. 971*, 60 F.3d 1375, 1380 (9th Cir. 1995).  If plaintiff "can state facts sufficient to raise a genuine issue of material fact as to whether [his] union breached its duty of fair representation, then

4

[he] may proceed to trial on [his] breach of contract action against [his] employer, even though [he] has elected not to join [his] union as a party." *Ibid*. Plaintiff has not stated sufficient facts.

Plaintiff must state sufficient facts that raise a genuine issue as to whether the union acted arbitrarily, discriminatory, or in bad faith toward him when it withdrew his case. The closest plaintiff comes is in his deposition statements regarding the grievance process. When asked whether he had evidence that the union's decision was discriminatory, he answered "yes." When asked what evidence he had, plaintiff replied, somewhat incoherently (Dep. 99):

> Basically when a person tells you that they don't know the provision and then they're the international union representative that was at the table when the negotiation was happening and after the fact of accusing me of different criminal convictions and crimes that I clearly had Alameda County and any other county verify that I had never been charged or convicted with, and documents to support this information. But I'm still being told they can't help me.

Defendant maintains that this testimony can be interpreted to mean that plaintiff accused the union of discriminating against him because it failed to take into account that he had been wrongly accused of crimes he didn't commit (Br. 12). Plaintiff does not contest defendant's characterization of his deposition statements. If defendant's characterization is correct, then plaintiff's allegations of discrimination miss the mark because they do not go to the correct issue. Plaintiff was fired for falsifying information on company records, not for having a criminal record.

But, reading his statements in a light most favorable to plaintiff, as is required on a summary judgment motion, it is possible to characterize them as alleging that the union discriminated against him *because* he was accused of committing crimes. If this characterization is correct, then plaintiff *has* sufficiently alleged facts that his union breached its duty of fair representation.

Regardless of which interpretation of plaintiff's statement is correct, plaintiff still fails to meet his burden for establishing that defendant employer breached the collective bargaining agreement. Plaintiff's employment was terminated for violating the employee standards of

5

1 conduct Rule R-22. That rule stated in full that an employee will forfeit his employment for
2 (Martin Decl. Exh. C at 9):

> Falsifying or omitting pertinent information on any [c]ompany record. With regards to employment application the rule shall be one year from the initial application unless unusual circumstances exist.

The collective bargaining agreement contains an almost identical provision (*id*. Exh. B at 27). Plaintiff contends that defendant breached this provision because he was fired more than one year after he allegedly falsified his employment application. Plaintiff filled out his application in 2001. He was fired in 2006. Defendant, however, contends that it did not breach this provision because plaintiff was not fired for falsifying his employment application; he was fired for falsifying other documents throughout his employment.

Plaintiff's legal name in 1990 was Reginald Edward Ellis (*id*. Exh. A at 34). The name plaintiff used on company records during his entire employment was Reggie Lamont Edwards (*id*. Exh. A at 104–08) (*id*. Exhs. D, E, F, G, and H). Plaintiff does not claim that he ever legally changed his name, and he does not provide any evidence to that effect. Plaintiff also does not assert that Reggie Lamont Edwards was his legal name when he used it on company records during his employment at New United Motors Manufacturing. Defendant, on the other hand, contends plaintiff falsified information on numerous company records by using a name other than his legal one. Defendant provides multiple documents and plaintiff's own deposition testimony as evidence. There is no genuine issue of material fact as to whether plaintiff falsified company records. Plaintiff's claim for breach of the collective bargaining agreement cannot survive defendant's summary judgment motion.

### 2. PLAINTIFF'S CLAIM FOR BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

Plaintiff contends that defendant breached the implied covenant of good faith and fair dealing because it "wrongfully terminated plaintiff in violation of the conditions of the contract, to which plaintiff duly performed all the conditions required" (First Amd. Compl. 8). Plaintiff's claim is preempted by Section 301. "Under California law, a claim for breach of this implied covenant is necessarily based on the existence of an underlying contractual relationship,

6

and the essence of the covenant is that neither party to the contract will do anything which would deprive the other of the benefits of the contract. This cause of action developed in the employment context to protect the job security of at-will employees who could be fired without cause under common law. No comparable lack of job security, however, generally exists for unionized employees, whose employment relationship is governed by a collective bargaining agreement. Therefore, we have generally held that Section 301 preempts the California state cause of action for breach of the implied covenant of good faith and fair dealing when an employee enjoys comparable job security under a collective bargaining agreement."
*Milne Employees Association v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991).

Plaintiff enjoyed more job security under the collective bargaining agreement than an at-will employee. The agreement permitted discharge only for "just cause" and other specifically delineated reasons. Section 301, therefore, preempts plaintiff's claims. Even if it did not preempt his claim, plaintiff still fails to sufficiently show that defendant did anything to deprive him of the benefit of the contract. The closest plaintiff comes is alleging that his termination letter cited a rule which contained out-dated language. The language used in the termination letter was:

> Falsifying or omitting pertinent information on any [c]ompany record. With regards to employment application, the rule shall be one year from the initial application unless unusual circumstances exist.

Plaintiff contends that the rule had been changed as of August 5, 2005. The updated rule stated that "[t]he company can no longer go back more than one year for falsification or omissions on employment applications." *First*, as discussed earlier, plaintiff was *not* fired for falsifying his employment application. Any changes to the rule concerning such falsification would be immaterial. *Second*, there is no substantive difference between the prior version of the rule and the updated version. Both stated that the company cannot fire someone for falsifying the employment application if the falsification took place more than one year ago. There is no genuine issue of material fact as to whether defendant breached the implied covenant of good faith and fair dealing.

7

### 3. THE CLAIM FOR SLANDER.

In relevant part, California Civil Code Section 46 defines slander as a "a false and unprivileged publication, orally uttered" which "charges any person with crime, or with having been indicted, convicted, or punished for crime" or "tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits." The statute of limitations on a slander claim is one year. Cal. Civ. Proc. Section 340(c).

All plaintiff's claims that concern statements made on May 18 and 24, 2006, are time-barred by the statute of limitations because they occurred more than one year prior to plaintiff's filing of the action on August 14, 2007. The only claims that are not time-barred or those that concern statements made in October 2006.

In October, Petty submitted documents to the union as part of its grievance procedure. The documents contained Petty's statements that plaintiff had been convicted of credit card fraud, assault with a deadly weapon, rape, and sexual assault, and that he was a suspect in a home invasion. Plaintiff's claim that the statements regarding the home invasion and rape were slanderous cannot survive defendant's summary judgment motion because the statements were substantially true, and plaintiff does not present any evidence that raises a genuine issue of fact as to their truthfulness.

"Truth, of course, is an absolute defense to any libel action. In order to establish the defense, the defendant need not prove the literal truth of the allegedly libelous accusation, so long as the imputation is substantially true so as to justify the 'gist or sting' of the remark." *Campanelli v. Regents of University of California*, 44 Cal.App. 4th 572, 581–82 (1st Dist. 1996). Plaintiff admitted that he was suspected of committing a home invasion (Martin Decl. Exh. A at 154). Plaintiff also admitted that he was convicted of statutory rape (*id*. at 81). The home invasion statement is clearly truthful for purposes of an absolute defense to slander.

8

The rape statement is a closer call, but it no doubt was substantially true "so as to justify the gist or sting of the remark."

Petty's statements regarding plaintiff's alleged credit card fraud and sexual assault are a different matter. Plaintiff contends that he has never been charged with or convicted of credit card fraud or sexual assault. Plaintiff, however, is still not able to maintain a slander action because the statements were privileged and not covered by the slander statute because they were made without malice to an interested person. A privileged communication is in relevant part one made "in a communication, without malice, to a person interested therein, by one who is also interested." Cal. Civ. Code Section 47(c). "[M]alice is not inferred from the communication itself. The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Id.* at 1370.

Petty was clearly an interested party as an assistant manager. Her job was to interpret and enforce the collective bargaining agreement. She also conducted investigations regarding employee conduct (Petty Decl. ¶ 2). Petty gave or made the statements to Tom Sana, Debra Johnson, and Gabriel Sanchez. Sana was the security manager for defendant. Johnson was manager of human resources. Sanchez was plaintiff's union representative. All three individuals were interested parties. Sana clearly had an interest in plaintiff's alleged criminal background as security manager. Johnson and Sanchez both had an interest in whether plaintiff had violated any company rules. Petty also had reasonable grounds for believing the truth of the statements because she learned of the alleged criminal charges from the Fremont police department. Her statements regarding plaintiff's alleged credit card fraud and sexual assault were privileged communications not covered by the slander statute even if they were not true.

In summary, plaintiff's claims that defendant committed slander by stating that he was convicted for a marijuana violation, credit card fraud, assault with a deadly weapon, rape, and sexual assault, and that he was a suspect in a home invasion cannot survive defendant's motion

9

for summary judgement. The claims are either time-barred, or defendant presents an absolute defense of truthfulness, or the allegedly slanderous statements were privileged. Plaintiff raises no genuine issue of material fact as to any of these defenses.

### 4. PLAINTIFF'S CLAIM FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.

Plaintiff contends that defendant wrongfully terminated him in violation of California public policy. Plaintiff's claim must fail because it is preempted by Section 301. "A claim that a discharge violates public policy is preempted if it is not based on any genuine state public policy or if it is bound up with interpretation of the collective bargaining agreement and furthers no state policy independent of the employment relationship. A claim is not preempted if it poses no significant threat to the collective bargaining process and furthers a state interest in protecting the public transcending the employment relationship." *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 643–44 (9th Cir. 1989). The only state public policy plaintiff points to is California Labor Code Section 923. That section concerns the right of an "individual unorganized worker" to have "full freedom of association." Plaintiff was, in fact, represented by a union. The policy plaintiff cites is, therefore, inapplicable and cannot provide the basis for his wrongful termination claim.

The closest plaintiff comes to making a viable claim that defendant violated public policy is in his complaint where he stated that defendant denied him "the full protection of union representation when it lied to his union representative, Gabriel Sanchez, as to the nature of the meeting which led to plaintiff's termination" (First Amd. Compl. 9). Defendant allegedly lied when Petty called plaintiff at home "to demand him to come into the office to speak with her. When he arrived, Ms. Petty asked union-representative Gabriel Sanchez to be present during an 'interview' of plaintiff" (Edward/Ellis Decl. 4). Rather than interview him, Petty confronted him with the information she had learned from the Fremont police. After the interview plaintiff was arrested. Although plaintiff was not interviewed by Petty, plaintiff does not show how this misrepresentation denied him his right to "full protection of union representation." If anything, Petty guaranteed him that right by insisting that his union

representative was present when she accused plaintiff of falsifying company records. Plaintiff's claim, therefore, is preempted by Section 301.

Even if the claim was not preempted by the section, it would still fail because he presents no evidence that would raise a genuine issue of fact as to *any* of the elements of a tort for wrongful termination in violation of public policy. The tort exists when the employee was terminated for (i) refusing to violate a statue; (ii) performing a statutory obligation; (iii) exercising a constitutional or statutory right; or (iv) reporting a statutory violation for the public's benefit. *Green v. Ralee Engineering Co.*, 19 Cal.4th 66, 76 (1998). Plaintiff was fired for falsifying company records, not for any of the above-mentioned actions. Plaintiff's claim for wrongful termination in violation of public policy, therefore, cannot survive defendant's motion for summary judgment.

## CONCLUSION

The Court has been generous in granting plaintiff many opportunities to shore up his pleadings and prove, but fairness now requires that this tortured action come to an end in favor of defendant. For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 22, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE